**E-FILED**
Wednesday, 01 March, 2017  10:16:59 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| AN'DRE ADAMS, *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-3338 |
| | ) | |
| GREGG SCOTT, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Nine civilly committed plaintiffs filed this lawsuit alleging that officials at the Rushville Treatment and Detention Facility burdened the practice of their religious faith in violation of the Religious Land Use and Institutionalized Persons Act and the First Amendment. Only Plaintiffs Adams, Steen, and LaRue now remain as active litigants. The matter comes before this Court for ruling on the Defendants' respective Motions for Summary Judgment. (Docs. 53, 55). The motions are granted.

## PRELIMINARY MATTERS

Plaintiffs filed a Motion to Compel Discovery (Doc. 59) and a Motion to Reopen Discovery (Doc. 62). Plaintiffs did not attach a

copy of the disputed discovery to their motion to compel, nor did

they file the motion within 14 days of the unsatisfactory response,

as required by the Court's Scheduling Order.  See (Doc. 33 at 8, ¶

19).  These failures notwithstanding, Plaintiffs allege in their motion

that they did not send the interrogatories in question to Defendants

until April 4, 2016, approximately 60 days after discovery closed.

See Text Order entered December 11, 2015 (extending discovery

deadline to February 8, 2016).  Plaintiffs do not explain why these

requests could not have been made sooner.  Plaintiffs' Motion to

Compel is denied.

Plaintiffs' Motion to Re-Open Discovery (Doc. 62) asks the

Court to reopen discovery to allow Plaintiffs an opportunity to

tender and receive responses to the interrogatories cited in their

motion to compel.  For the same reasons stated above, Plaintiffs'

motion (Doc. 62) is denied.

Defendant Simpson filed a Motion to Strike (Doc. 67).

Defendant Simpson alleges that an exhibit attached to Plaintiffs'

motion to reopen discovery should have been filed separately

because it is a response to a motion for summary judgment.

Plaintiffs reference this document in their motion to reopen

discovery.  <u>See</u> (Doc. 62 at 3, ¶ 17).  Therefore, the Court sees no reason to strike the exhibit.  Defendant's motion is denied.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  <u>Ogden v. Atterholt</u>, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiffs are nondenominational Christians who identify "speaking the word" and assembly with other nondenominational believers, among other things, as central tenets of their faith. TDF officials do not appear to have ever offered a nondenominational Christian group service at the facility, but, prior to April 2013, residents were allowed to share their nondenominational beliefs at the Christian (Baptist) group service. Residents were also permitted to attend, without giving prior notice to TDF officials, as many group services per week as they were so inclined, including those of other faiths.

In April 2013, the volunteer pastor in charge of the Christian service informed residents that he would assume all preaching duties at the group services. As a result, Plaintiffs were no longer allowed to share their views in front of the group. The basis for the pastor's decision, as stated in a letter sent to residents, cited concerns from TDF officials that group participation in the services had reached a point where such participation was "counter-productive [to] the goals of the therapy programs." (Doc. 60-3 at 7). In addition, Plaintiff Adams testified at his deposition that other

residents had filed grievances about nondenominational Christians speaking at the group services.  Adams Dep. 35:21-36:2.  Plaintiff Steen identified the prohibition on sharing his opinion at the services as the sole basis for his participation in this lawsuit.  Steen Dep. 58:9-59:2.

A couple months later, TDF officials changed the policy regarding attendance at group religious services as the lack of advance notice regarding the number of attendees at a given service caused overcrowding, staffing, and security issues.  On or about July 24, 2013, Rushville officials distributed a memo to TDF residents that outlined the new policy as follows:

> You may enroll in only one religious service at a time and enrollment is approved on a first-come, first-served basis until the service is at full capacity. If you wish to change to a different service, you must resubmit your Religious Group Enrollment form to the Religious Services Coordinator and upon receipt of an approved copy; you may attend the next available service. No more than one change may be submitted in any calendar year absent the approval of the Program Director. No bags or non-religious items may be brought to any religious service, only those materials pertaining to the service you are attending.

(Doc. 54-2 at 2).  According to the memo, Rushville provided group religious services for the following faiths: Christian; Jehovah

Witness; Mennonite; Jewish; Muslim; Zen Buddhism; and Satanic. TDF officials approved the Plaintiffs' respective requests to attend the Christian service.  (Doc. 60-1 at 21-23).

Plaintiff Steen testified that he had no desire to attend services other than those held for his Christian faith.  Steen Dep. 35:10-11 ("I've never had a desire to participate in another service.").  Plaintiff Adams and Plaintiff LaRue testified that the new policy prohibited them from attending multiple services, but that such attendance was not a requirement of their faith.  LaRue Dep. 17:7-19:16 (could not attend both Christian and Mennonite services, but his faith requires only that he assemble with other nondenominational believers); Adams Dep. 26:8-28:21 (attendance at Muslim services is beneficial, but it does not further his practice of nondenominational Christianity).

Plaintiffs requested the formation of a nondenominational Christian group service.  TDF policy also allows for the formation of new group religious services, but the policy requires specifics regarding the nature of any proposed group and the types of activities to be conducted during group meetings.  The requested services need not be affiliated with any particular religion.

According to a grievance Plaintiff filed, Defendant Billingsley denied the request and stated "that the Tuesday evening Christian service meets the needs of this facility for Christian service." (Doc. 60-1 at 9). Defendant Scott alludes in his affidavit that the request may have been denied on the grounds that it took the form of a petition, not a proposal. (Doc. 54-1 at 5-6, ¶ 20). The former is considered contraband. Plaintiffs provided a copy of a document that appears to request a "resident oriented service" with a list of signatures, but the document does not specifically request a nondenominational Christian service. (Doc. 60-4 at 15).

Defendant Simpson, in her capacity as Grievance Examiner, denied grievances Plaintiff filed regarding the formation of a nondenominational Christian service. Defendant Simpson responded to the grievances as follows:

> My understanding of a non-denominational church service is one that reflects the wishes, beliefs, and cultural background of the participants without being formally aligned with an established religion, like Christianity or Methodist for example. The potential problem is how the non-denominational standards will be determined by which the group will abide and practice. What I anticipate is a power struggle emerging among those involved. Residents are permitted a reasonable opportunity to pursue their religious beliefs within the framework of an established religion.

(Doc. 60-1 at 13).

TDF officials also denied Plaintiffs' requests to obtain electronic media directly from religious organizations.  The relevant TDF policy does not prohibit receipt of CDs and DVDs, but the items must be purchased from a commercial vendor, factory sealed, and may not be in a rewritable or recordable format.  According to Defendant Simpson's response to one of Plaintiff Adams' grievances, the policy seeks to prevent "unwanted materials from entering the facility that are determined [to be] harmful to the Program's goals. (An example would be pornography found embedded on rewritable discs)."  Id. at 16.

Finally, Plaintiffs testified that they would like to be allowed to have "feasts" to celebrate the Easter and Christmas holidays similar to the celebration TDF officials allow Muslims to have at the end of Ramadan.  TDF officials allow religious groups to have celebratory feasts during religious holidays if the groups fund the celebrations themselves.

## ANALYSIS

## Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits governmental imposition of a "substantial burden on the religious exercise" of a confined individual, even if the burden results from a rule of general applicability, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a).  In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion; and, (2) that the challenged practice substantially burdens that exercise of religion. Id. § 2000cc–2(b); Holt v. Hobbs, --- U.S. ---, 135 S. Ct. 853, 862 (2015).

"Religious exercise," as defined in the statute, means "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  See 42 U.S.C. § 2000cc-5(7)(A). Requests for religious accommodation "must be sincerely based on a religious belief and not some other motivation."  Holt, 135 S. Ct.

at 162.  Defendants do not argue that group services are not a religious exercise, or that Plaintiffs' beliefs are not sincerely held.

RLUIPA does not define "substantial burden," but recent Supreme Court decisions frame the relevant inquiry as whether the inmate was required to "engage in conduct that seriously violates his religious beliefs."  Holt, 135 S. Ct. at 862 (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. ---, ---, 134 S. Ct. 2751, 2775 (2014)); see Schlemm v. Wall, 784 F.3d 362, 364 (7th Cir. 2015) (applying the Holt and Hobby Lobby standards).  In so ruling, the Supreme Court "articulate[d] a standard much easier to satisfy" than the longstanding jurisprudence interpreting RLUIPA in light of First Amendment rights.[1]  Schlemm, 784 F.3d at 364.

The July 2013 policy that limits attendance at group religious services to one service per week had no effect on Plaintiff Steen as he testified that he does not desire to attend any other service. Plaintiffs Adams and LaRue testified that they wanted to attend multiple services, but that it was not a requirement of their religion.

---

[1] Prior to the Supreme Court's decisions in Holt and Hobby Lobby, courts interpreted "substantial burden" for RLUIPA purposes as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable."  Schlemm, 784 F.3d at 364; see also Nelson v. Miller, 570 U.S. 868, 876 (7th Cir. 2009) (RLUIPA has been "interpreted with reference to Supreme Court free exercise jurisprudence.").

Insofar as Plaintiffs sought to congregate with other nondenominational Christians, the policy allowed for them to enroll in the same group service, which they did.

The pastor's decision to assume all preaching duties at the Christian service may have imposed some burden upon the Plaintiffs' ability to "spread the word" in accordance with their religious beliefs, but Plaintiffs, by their own definition, were not bound to any one particular denomination's service. To that end, the TDF policy allowed for Plaintiffs to request participation in another group service (e.g. Mennonite service on Friday nights) that may have been more compatible with their religious tenets.

The Court recognizes that, arguably, none of the denominational services offered at the TDF would have been a perfect fit for the Plaintiffs' nondenominational practice. If Plaintiffs were unable to find a suitable group service already offered, policy permitted them to request formation of a new religious group. The policy in question requires that those making the request outline the parameters under which they will govern themselves. Plaintiffs made an attempt to request a new group service, but the

documents in the record contain only a request for a vaguely defined "resident based group service."

Plaintiffs have failed to point to any provision within the TDF policies that requires them to engage in conduct that seriously violates their religious beliefs.  Accordingly, the Court finds that no reasonable juror could conclude that the TDF policies in question placed a substantial burden upon Plaintiffs' religious practice.

Assuming Plaintiffs could show a substantial burden, RLUIPA does not require courts to "blind themselves to the fact that the analysis is conducted in [an institutionalized] setting." Holt, 135 S. Ct. at 866.  Holt recognizes that security is a compelling government interest at any institutional facility. Holt, 135 S. Ct. at 867 (recognizing prison security is a compelling state interest). Justice Sotomayor points out in her concurring opinion that nothing in Holt precludes deference to officials' expertise in maintaining security "when prison officials offer a plausible explanation for their chosen policy that is supported by whatever evidence is reasonably available to them." Id. at 867 (Sotomayor, J., concurring).

RLUIPA "'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'" <u>Holt</u>, 135 S. Ct. at 863 (quoting <u>Hobby Lobby</u>, 134 S. Ct. at 2779). Courts must "'scrutinize the asserted harm of granting specific exemptions to particular religious claimants' and 'look to the marginal interest in enforcing' the challenged government action in that particular context." <u>Id.</u> (quoting same).

Here, the application of the TDF policy restricting attendance at multiple group services had no effect on the Plaintiffs' core religious tenets.  Even so, Defendants offered evidence that the number of residents confined at the TDF has grown significantly in recent years, and, without advance notice, security staff is unable to determine the appropriate measures to maintain safety and security.

With respect to the inability to speak or preach at the Christian service, Defendants offered evidence that Plaintiffs' requests to speak at a group service, or to engage in religious discussion, could be accommodated through formation of a new

religious group if Plaintiffs submitted a specific proposal.  The
requirement for specificity provides officials with an opportunity to
assess the sincerity of the requestor's religious beliefs and also
ascertain any safety and security concerns that may arise in
granting the request for a new group.  This is consistent with the
holding in Holt.  Id. at 866-67 (RLUIPA affords officials "ample
ability" to maintain security and permits officials to question the
authenticity of an individual's religious beliefs in the context of a
request for religious accommodation).

Defendant Simpson alluded to issues that could arise with
respect to a religious group formed without adequate guidelines in
her grievance response, but nothing therein, or within the TDF
policy, precludes the formation of Plaintiffs' desired religious group
upon a properly submitted proposal.  Moreover, Defendant Scott
stated in his proposal that these types of requests are now handled
by committee rather than by Defendant Billingsley, with whom
Plaintiff Adams took issue in his grievance.

Finally, with respect to the CDs and DVDs Plaintiffs seek to
possess, Defendants argue that requiring the discs to be in a non-
rewritable and non-recordable format and ordered from a

commercial vendor prevents residents from smuggling contraband, such as pornographic images, into the facility.  Plaintiffs have not provided any evidence that the electronic media they seek to obtain complies with this rule, and the Court sees no less restrictive means in preventing such contraband from entering the facility.

Therefore, the Court finds that no reasonable juror could find that Defendants violated Plaintiffs rights under the Religious Land Use and Institutionalized Persons Act.

## First Amendment Claims

The Free Exercise Clause of the First Amendment prohibits government-imposed burdens upon an individual's religious practice.  Unlike the RLUIPA analysis, any restriction on Plaintiff's ability to practice his religion need only be "reasonably related to a legitimate penological interest," which includes, among other things, institutional security.  Cf. Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). In determining the constitutionality of a restriction, a court must consider four factors:  "(1) whether the restriction is rationally related to a legitimate and neutral government objective; (2) whether there are alternative means of exercising the right that remain open

to the inmate; (3) what impact an accommodation of the asserted right will have on [staff] and other [residents]; and, (4) whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns." Id. (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

As discussed above, Plaintiffs have not shown that the TDF policies in question placed a substantial burden on any identified core belief. The TDF policies appear rationally related to legitimate government objectives in reducing overcrowding, determining appropriate staffing needs, and eliminating the introduction of contraband into the facility.

Plaintiffs have alternative means through which they can exercise their religious beliefs through personal study, conversations with other residents outside of a group religious service, and through religious CDs and DVDs available at the TDF library. Plaintiff Adams also admitted that other residents at the Christian service filed grievances regarding the nondenominational Christians speech at the service. The Court can reasonably infer that the content of such speech was viewed as detrimental to those who belong to that particular religious denomination. Finally,

nothing suggests the policies in place were an exaggerated response to penological concerns as it relates to Plaintiffs' situations.

Therefore, the Court finds that no reasonable juror could conclude that Defendants violated Plaintiffs' First Amendment rights.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion to Compel [59] is DENIED.  Plaintiffs' Motion to Reopen Discovery [62] is DENIED.**

2) **Defendant's Motion to Strike [67] is DENIED.**

3) **Defendants' Motions for Summary Judgment [53][55] are GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiffs.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**

4) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  FED. R. APP. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the**

**$505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:       March 1, 2017.

FOR THE COURT:


*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE